IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL STATON, | ) | |
| | ) | Civil Action No. 11 – 133J |
| Plaintiff, | ) | |
| | ) | District Judge Kim R. Gibson |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| SUPERINTENDENT MICHAEL BRITTON, JOHN DOE, DEPUTY SUPERINTENDENT PAUL SMEAL, D.L. KESSLING, D. CLOSE, F. HARTNETT, CAPATION BRUMBAUGH, MICHAEL BAKER JOHN DOE, | ) | ECF No. 40 |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**I.  RECOMMENDATION**

It is respectfully recommended that the Motion for Summary Judgment filed by Defendants Baker, Brumbaugh, Close, Hartnett, Kessling, and Smeal (ECF No. 40) be granted. It is further recommended that the John Doe Defendants be dismissed and that this case be closed.

**II.  REPORT**

Michael Staton ("Plaintiff") is a state inmate currently confined at SCI-Smithfield in Huntingdon, Pennsylvania. He initiated this prisoner civil rights action in the Middle District of Pennsylvania on October 25, 2010, and the case was subsequently transferred to this Court on June 7, 2011. In his Amended Complaint (ECF No. 15), he alleges that Defendants, various employees at of the Pennsylvania Department of Corrections at SCI-Houtzdale and SCI-

Smithfield, violated federal and state law by imposing a ban on visiting privileges with his mother. Defendants have filed a Motion for Summary Judgment (ECF No. 40), along with a Brief in Support thereof (ECF No. 41) and a Concise Statement of Material Facts (ECF No. 42). They also filed a Supplement to the Motion for Summary Judgment (ECF No. 43). Although Plaintiff was given an opportunity to respond to Defendants' Motion, he did not file a response in opposition. As such, Defendants' Motion is now ripe for review and should be granted for the reasons stated herein.

## I. Material Facts[1]

The basis of this suit is a ban on visiting privileges imposed upon Plaintiff's mother, Crystal Heckman. The ban was imposed shortly following a prison visit between Plaintiff and his mother on October 19, 2008, when Plaintiff was an inmate at SCI-Houtzdale. This visit was abruptly terminated when prison staff intervened to stop the passage of marijuana by Plaintiff's sister, Pam Staton, to another prisoner, Earl Brownlee, whom she was visiting at the same time and in close proximity to the visit occurring between Plaintiff and his mother. Heckman had also driven Pam to the prison that day, and a monitored phone call Heckman received from another inmate at SCI-Houtzdale later that day gave prison officials reasonable suspicion that she and Plaintiff had some foreknowledge that the drug smuggling attempt would be made. Consequently, on October 23, 2008, she was indefinitely banned from any future prison visits.

---

[1] Under the Local Rules of Court for the Western District of Pennsylvania, material facts set forth in a moving party's statement of facts will be deemed admitted for the purpose of deciding a motion for summary judgment "unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." *See* L.R. 56.1(E). Courts in this district strictly apply Local Rule 56 and deem uncontroverted facts to be admitted. *See* Emigh v. Miller, No. 08-1726, 2010 U.S. Dist. LEXIS 74414, 2010 WL 2926213 (W.D. Pa. July 23, 2010) (collecting cases). Because Plaintiff failed to respond to the pending Motion for Summary Judgment or file a "counter" statement of material facts, Defendants' statement of facts as set forth in ECF No. 42 will be admitted as true and correct.

Plaintiff was later transferred to SCI-Smithfield, and, despite the indefinite ban on visits, Heckman's privilege to have noncontact visits with her son was reinstated on January 4, 2012. Her privilege to have contact visits with him was allowed six months later.

## II. Legal Standard

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact. National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting Anderson, 477 U.S. at 251-52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted.

Anderson, 477 U.S. at 249-50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

### III. Discussion

In his Amended Complaint, Plaintiff claims that the visiting ban placed on his mother violated his First Amendment right of association (Count I), his Fourteenth Amendment right to due process (Count II), the Pennsylvania Department of Corrections' visiting policy (Count III), his Eighth Amendment right to be free from cruel and unusual punishment (Count IV), and Pennsylvania state law of official oppression (Count V). Defendants move for summary judgment on all Counts. Each will be addressed *infra*.

**A. Counts I, II, and IV**

Plaintiff asserts that the visitation ban placed on his mother violated his right to due process (Count II), right of association (Count I), and to be free from cruel and unusual punishment (Count IV).

A claimed denial of procedural due process requires a plaintiff to show that a protected liberty or property interest was taken in a procedurally deficient manner. *See* Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 570-71 (1972). Any protection for the liberty interest that Plaintiff may have in visiting with family members must derive either from the Due Process Clause itself or from state law. *See* Sandin v. Conner, 515 U.S. 472, 483-84 (1995). However, the Due Process Clause has not been held to guarantee an interest in prison visitation. *See* Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (rejecting notion that "unfettered visitation is guaranteed directly by the Due Process Clause"); *see also* Overton v. Bazzetta, 539

U.S. 126, 131 (2003) (observing that "freedom of association is among the rights least compatible with incarceration"). Indeed, district courts in this circuit have held that neither convicted prisoners nor their family members have an inherent constitutional right to visitation. *See* Flanagan v. Shively, 783 F. Supp. 922, 934 (M.D. Pa.), *aff'd*, 980 F.2d 722 (3d Cir. 1992), *cert. denied*, 510 U.S. 829 (1993); Doe v. Sparks, 733 F. Supp. 227, 230 n.3 (W.D. Pa. 1990); Buehl v. Lehman, 802 F. Supp. 1266, 1270 (E.D. Pa. 1992) (visitation is a privilege subject to the discretion of prison authorities). In addition, Plaintiff has made no showing that Pennsylvania law creates a protected liberty interest in visiting privileges. To the extent he attempts to do so in Count III, such argument is addressed in the proceeding section.

Assuming some protection for Plaintiff's right of association, such a right is necessarily circumscribed by the need to afford deference to prison officials in the exercise of their professional judgment when pursuing legitimate penological interests. *See* Overton, 539 U.S. at 131-32 (concluding that the Court "need not attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration because the challenged regulations bear a rational relation to legitimate penological interests"); *see also* Wirsching v. Colorado, 360 F.3d 1191, 1198 (10th Cir. 2004) (explaining that while "courts and commentators have observed that visitation may significantly benefit both the prisoner and his family . . . the Constitution allows prison officials to impose reasonable restrictions upon visitation").

The suspension imposed upon Plaintiff's mother was "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). Superintendent Britton explained that, after an investigation, it was determined that Plaintiff's mother conspired with another visitor in an attempt to introduce nine balloons of marijuana into the prison facility. Her

5

visiting privileges were suspended in accordance with DOC regulations, and she was afforded an opportunity to appeal, and later, to seek reinstatement. Clearly there is a rational basis for imposing this type of restriction upon an individual who is determined to have been involved in the introduction of contraband into a prison.

Removal from society is a fundamental incident of imprisonment and where visitation is permitted, it is often narrowly circumscribed. *See* Thompson, 490 U.S. at 461 (denying prison visitation with mother characterized as well within ordinarily contemplated terms of imprisonment). The United States Supreme Court has recognized that the Constitution does not require that inmates be allowed visits "when reasonable, experienced administrators have determined, in their sound discretion, that such visits will jeopardize the security of the institution." Block v. Rutherford, 468 U.S. 576, 589 (1984). More recently, the Supreme Court elaborated that "[w]ithdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior." Overton, 539 U.S. at 134. The Court of Appeals for the Third Circuit has similarly concluded that a legitimate prohibition on visitation is acceptable even if it implicates a fundamental right, such as family relationships. Inmates of Allegheny County v. Pierce, 612 F.2d 754, 759 (3d Cir. 1979). Based on the application of the above standards, the visitation ban placed on Plaintiff's mother is not a condition of confinement so reprehensible as to be deemed inhumane under contemporary standards or one that deprives an inmate of minimal civilized measure of the necessities of life, as required to implicate the Eighth Amendment. *See* Bazzetta v. McGinnis, 124 F.3d 774, 779 (6th Cir. 1997) (ban on contact visits "cannot be said to constitute cruel and unusual punishment"); Toney v. Walsh, No. 13-09, 2013 U.S. Dist. LEXIS 4136, at *10-13 (M.D. Pa.

Jan. 10, 2013) (indefinite visitation restriction placed on plaintiff and his fiancée did not violate the Eighth Amendment).

For these reasons, Defendants should be granted summary judgment on Counts I, II, and IV.

**B. Count III**

Plaintiff claims that he has a cause of action against Defendants by application of the DOC administrative policy governing prison visitation, DC-ADM 812. Specifically, Plaintiff maintains that Defendants' violated the policy by placing a permanent visitation ban on his mother for a first offense and that this violation gives rise to a cause of action under Pennsylvania state law as well as the First Amendment.

Notwithstanding the fact that Plaintiff misunderstands DC-ADM 812 and Defendants in no way deviated from this policy,[2] state agency guidelines do not, in and of themselves, create a right, and do not have the force of law. *See* Mercy Catholic Med. Ctr. v. Thompson, 380 F.3d 142, 154 (3d Cir. 2004); *see also* Atwell v. Lavan, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. Dec. 21, 2007) (a prison policy manual does not have the force of law and does not rise to the level of a regulation). As such, a violation of internal policy does not automatically rise to the level of a Constitutional violation. Whitcraft v. Township of Cherry Hill, 974 F. Supp. 392, 398 (D. N.J. 1996) (citing Daniels v. Williams, 474 U.S. 327, 332-33 (1986); Edwards v. Baer, 863 F.2d 606, 608 (8th Cir. 1988); Jones v. Chieffo, 833 F. Supp. 498, 505-06 (E.D. Pa. 1993)). *See also*

---

[2] Plaintiff contends that a first offense should have only resulted in a 180 visiting suspension. However, the portion of DC-ADM 812 which Plaintiff cites deals only with inmates who are found guilty of a misconduct for dealing, using, or possessing illegal or non-prescribed drugs. *See* DC-ADM 812, §K(3). Plaintiff fails to acknowledge that DC-ADM 812 also provides that "[v]isits may be suspended, terminated, or restricted, to maintain the security or orderly running of the visiting room and/or the facility or as made necessary by the behavior of the inmate or visitor(s)." DC-ADM 812, §K(1). Additionally, any visitor who attempts to bring drugs "upon the grounds of any Pennsylvania Department of Corrections facility will be permanently banned from visiting at all Department of Corrections facilities . . . ." DC-ADM 812, §K(5).

Hovater v. Robinson, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation."); Walker v. Zenk, No. 01-1644, 2007 U.S. Dist. LEXIS 96351, at *29-30 n.19 (M.D. Pa. Nov. 15, 2007) (*adopted in part and rejected in part by* 2008 U.S. Dist. LEXIS 9086 (M.D. Pa. Feb. 7, 2008) ("[A]lleged violations of prison policies do[] not rise to the level of a Constitutional claim."); Estrella v. Hogsten, No. 06-1340, 2007 U.S. Dist. LEXIS 51208, at *21 (M.D. Pa. July 16, 2007) (holding that mere failure of prison officials to follow their own regulations alone is not a constitutional violation). Moreover, the policy at issue does not create a right under state law either. Indeed, DC-ADM 812, Section VI specifically states, "This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual."

In connection with a materially comparable version of DC-ADM 812, the Pennsylvania Commonwealth Court addressed this same argument in Robles v. Pa. Dept. of Corrections, 718 A.2d 882 (Pa. Cmwlth. 1998). There, the court stated:

> Robles acknowledges the holding of the United States Supreme Court in Kentucky Department of Corrections v. Thompson, 490 U.S. 454 (1989). "[T]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence . . . and therefore is not independently protected by the Due Process Clause." He correctly points out that, in the prison setting, state law may nonetheless create enforceable liberty interests, subjecting those interests to due process protections, depending on the state's pertinent statutes and regulations. Id. The most common manner by which a state creates such a liberty interest is by establishing "substantive predicates" to govern official decision making and by mandating the outcome of those decisions on finding that the relevant criteria have been met. Id., 490 U.S. at 462 (citations omitted).
>
> An examination of the Department's policy here reveals that it, like the Kentucky prison regulation in Thompson, does not meet the test for stator or regulatory creation of a liberty interest protected by the Due Process Clause. It lacks the "requisite mandatory language" and "stops short of requiring that a particular

result is to be reached" once substantive criteria are met. Id. at 490 U.S. at 464. . .
. . We therefore find no state created liberty interest that mandated a hearing on Robles' request for a special permission visit before it was acted on, if that is the process Robles believes is due him. *See*, *also*, Al Samad v. Bureau of Corrections, 500 A.2d 1242 (1985).

Robles, 718 A.2d at 883-84 (footnotes omitted).

Plaintiff simply does not have an enforceable right under the pertinent DOC policy as he contends. Consequently, Defendants should be granted summary judgment on this Count.

### C. Count V

At this Count, Plaintiff raises an intentional tort claim for official oppression under Pennsylvania state law. Defendants are correct that this is ordinarily a criminal offense and does not create a private civil cause of action. *See* Schmoltze v. County of Berks, No. 99-1069, 2000 U.S. Dist. LEXIS 503, at *23 (E.D. Pa. Jan. 14, 2000). Nevertheless, as employees of the Pennsylvania Commonwealth, Defendants are protected by sovereign immunity from the imposition of liability for any negligent and intentional torts under Pennsylvania state law. *See* 1 Pa. C.S. § 2310; *see also* Holt v. Nw. Pennsylvania Training P'ship Consortium, Inc., 694 A.2d 1134, 1139 (Pa. Cmmwlth. Ct. 1997) (citing La Frankie v. Miklich, 152 Pa. Commw. 163, 618 A.2d 1145 (Pa. Cmwlth. Ct. 1992)). As such, Defendants should be granted summary judgment on this Count.

### D. John Doe Defendants

Plaintiff has named two John Doe Defendants, the first being a Captain or Shift Commander at SCI-Houtzdale, and the second being a Lieutenant or Security Officer at SCI-Smithfield. As of the date of this Report and Recommendation, Plaintiff has not identified these two John Doe individuals.

The Court notes that it has been well over two years since Plaintiff initiated this lawsuit and he has not yet identified these two John Does. Discovery is now complete and Plaintiff has had ample opportunity to endeavor to identify these Defendants but has not yet done so. At this time, the proper exercise of this Court's broad discretion in this matter under Federal Rule of Civil Procedure 21 would call for the dismissal of these currently fictitious parties. *See* Blakeslee v. Clinton County, 336 F. App'x 248 (3d Cir. 2009) (affirming dismissal of fictitious defendants after ten months of litigation); Adams v. City of Camden, 461 F. Supp. 2d 263, 271 (D. N.J. 2006) (dismissing John Doe defendants after a year of discovery and motion practice). Moreover, it is clear that identification of the two John Does is futile because Plaintiff's claims against them fail for the same reasons they fail against the moving Defendants. Therefore, it is recommended that the John Doe Defendants be dismissed and this case be closed.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion for Summary Judgment filed by Defendants Baker, Brumbaugh, Close, Hartnett, Kessling, and Smeal (ECF No. 40) be granted. It is further recommended that the John Doe Defendants be dismissed and that this case be closed.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2, the parties are allowed fourteen (14) days from the date of service to file objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: January 25, 2013

/s/ Lisa Pupo Lenihan

Lisa Pupo Lenihan  
Chief United States Magistrate Judge

cc: Michael Staton  
    GT-1279  
    SCI-Smithfield  
    P.O. Box 999  
    1120 Pike Street  
    Huntingdon, PA 16652  
    *Via U.S. Mail*

    Counsel of Record  
    *Via ECF Electronic Mail*